IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>TYLER DALE MEDICINE HORSE,<br><br>Defendant/Movant. | Cause No. CR 22-69-BLG-SPW<br>CV 24-83-BLG-SPW<br><br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant/Movant Tyler Dale
Medicine Horse's ("Medicine Horse") motion to vacate, set aside, or correct his
sentence, pursuant to 28 U.S.C. § 2255. (Doc. 42.) Also, pending is Medicine
Horse's motion for clarification of sentence. (Doc. 40.) Medicine Horse is
proceeding pro se.

## I.      Preliminary Review

Before the United States is required to respond, the Court must determine
whether "the motion and the files and records of the case conclusively show that
the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules

1

Governing Section 2255 Proceedings for the United States District Courts. A

petitioner "who is able to state facts showing a real possibility of constitutional

error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98

F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring)

(referring to Rules Governing § 2254 Cases). But the Court should "eliminate the

burden that would be placed on the respondent by ordering an unnecessary

answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254

Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255

Proceedings.

    As explained below, Medicine Horse does not survive Rule 4 review and the

matter will be dismissed.

## II. Background

    The offense conduct underlying the charges arose out of events which

occurred on November 27, 2021. It is briefly summarized as follows:

> BIA Officer Rossman attempted to conduct a traffic stop on a van being
> driven by Medicine Horse. Officer Rossman had received multiple calls
> reporting the vehicle was speeding as it drove toward Lame Deer. Officer
> Rossman observed the vehicle swerving over the fog line and the jerking
> back toward the center line. The vehicle repeatedly crossed over the center
> line. When Officer Rossman activated his emergency lights, the vehicle
> sped off.
>
> Further pursuit ensued, during which Medicine Horse swerved into a ditch
> and nearly struck a pedestrian holding a child. Medicine Horse crashed into
> a light pole and while attempting to reverse he struck Officer Rossman's
> patrol vehicle. Medicine Horse persisted in his attempts to drive the vehicle

2

away, and Officer Rossman deployed his OC spray. When Medicine Horse continued to disobey commands, he was tased. Medicine Horse was ultimately transferred to the Norther Cheyenne Emergency Room. During a sobriety exam, he admitted to using methamphetamine. A subsequent blood draw and urinalysis both tested positive for methamphetamine. A portable breath test administered to Medicine Horse registered an alcohol level of .231% BAC. A magazine for a .22 caliber weapon was also found on his person.

During a subsequent search of the vehicle, officers discovered a sawed off .22 caliber rifle and an open paper bindle of a white powdery substance that tested positive for methamphetamine. ATF agents conducted a search via the National Firearms Registration and Transfer Record and learned Medicine Horse did not have a short barreled rifle registered to him. Additionally, Medicine Horse had previously been convicted of Sexual Assault on a Minor in Cause No. CR 12-28-BLG-RFC, in the United States District Court, District of Montana, and was prohibited from possessing firearms.

*See generally*, PSR (Doc. 38 at 4-5, ¶¶ 9-12.)

On June 16, 2022, a grand jury indicted Medicine Horse for being a Prohibited Person in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), (Count I), and Possession of an Unregistered Firearm, in violation of 26 U.S.C § 5861(d), (Count II). *See* Indictment (Doc. 2 at 1-2.)

Medicine Horse was writted out of tribal custody. (Docs. 7 & 8.) On September 27, 2022, he made his initial appearance before Magistrate Judge Cavan, along with appointed counsel Federal Defender Mr. Evangelo Arvanetes. Medicine Horse entered not guilty pleas and was remanded to the custody of the United Staes Marshal Service. *See* (Doc. 9.) Medicine Horse subsequently appeared before Judge Cavan on December 15, 2022, and changed his pleas to

3

guilty without the benefit of a plea agreement. (Doc. 23.)  This Court accepted his guilty pleas. (Doc. 26.)

The matter proceeded to sentencing without further issue.  On April 13, 2023, the undersigned sentenced Medicine Horse to the Bureau of Prisons ("BOP") for a period of 30 months on each count, with the sentences to run concurrently, followed by a 3- year term of supervised release. *See* Judg. (Doc. 36.)  Medicine Horse did not file a direct appeal.  At the time of his sentencing in this Court, Medicine Horse had not yet been convicted or sentenced in connection with his tribal court proceedings. *See e.g.*, PSR (Doc. 38 at 2, 7-13.)  In fact, no tribal court proceeding related to the November 27, 2021 conduct is even noted in the PSR. (*Id.*)

On June 25, 2024, the Court received a letter from Medicine Horse seeking clarification of the nature of his sentence. (Doc. 40.)  Medicine Horse explained that at the time of sentencing he was already serving an undischarged sentence out of tribal court for different offenses involving the same underlying incident. (*Id.* at 1.)  Medicine Horse believes that under the United States Sentencing Guidelines 5G1.3(b)(1)-(2), his sentences in this court should be adjusted downward for time he already served on the tribal sentence and run concurrently to the remainder of the undischarged term of tribal imprisonment. (*Id.*)  Medicine Horse states that he will discharge his tribal sentence in October of 2024.   It is his understanding that

his federal sentence will then begin, but that this sentencing structure violates the aim of the Sentencing Guidelines. Medicine Horse asks that his federal sentence be run concurrently to the tribal sentence. (*Id.* at 2.)

Medicine Horse then filed a Section 2255 motion to vacate/modify his sentence. (Doc. 42.) He argues that his federal sentence is improperly running consecutively to the undischarged tribal sentence. (*Id.* at 3.) He asks that this Court correct his sentence and have it run concurrently to the undischarged tribal sentence and that he be given credit for time served from the date of detainment by federal officers to the time of sentencing. Medicine Horse believes he should be credited from December 6, 2021 to April 13, 2023, as concurrent time with his tribal sentence. (*Id.* at 5.)

### III. Analysis

The Court has considered Medicine Horse's challenges to the validity of his conviction and sentence. For the reasons explained below, the § 2255 motion will be denied.

"A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States […] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To warrant relief under § 2255, a prisoner must

allege a constitutional, jurisdictional, or otherwise "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783 (1979)(*quoting Bowen v. Johnston*, 306 U.S. 19, 27 (1939)).  In contrast, "[e]rrors of law which might require reversal of a conviction or sentence on appeal do not necessarily provide a basis for relief under § 2255." *United States v. Wilcox*, 640 F. 2d 970, 973 (9th Cir. 1981).

Section 5G1.3 of the USSG "provides that under certain circumstances, if a defendant is already subject to an undischarged term of imprisonment for 'relevant conduct,' the sentencing court should adjust a defendant's sentence for the crime of conviction to take into account the time already served and should order the sentence to run concurrently with the remaining undischarged term of imprisonment." *Reynolds v. Thomas*, 603 F. 3d 1144, 1149 (9th Cir. 2010); *see also Lopez v. Terrell*, 654 F. 3d 176, 179 (2nd Cir. 2011)("Section 5G1.3(b) of the Guidelines therefore applies where a 'defendant faces punishment for the same criminal conduct in two prosecutions[,]… [and] ensures that the defendant receives 'credit' for time already served to eliminate double punishment." (citations omitted)).

The problem with Medicine Horse's position is that at the time he appeared before his Court, although he had been detained by tribal authorities, he had not yet

been convicted or sentenced in tribal court. Moreover, it is unclear what tribal

charges he was facing, as none are reflected in the PSR for November 27, 2021.

During the sentencing hearing, Mr. Arvanetes acknowledged that Medicine Horse

had been charged with driving offenses arising out of the November 2021 arrest by

tribal authorities, and had been incarcerated, but there is no indication Medicine

Horse had been sentenced. Mr. Arvanetes suggested that the fact of the tribal

charges could be considered under Section 3553(a) of Title 18, to impose a

sentence sufficient, but not greater than necessary, but he did not argue the tribal

charges constituted "relevant conduct" for purposes of USSG § 5G1.3.

Additionally, it was acknowledged that while the same series of events led to both

tribal and federal charges, Medicine Horse was only charged with gun possession-

related offenses in this Court. So, different criminal conduct than the driving

offenses Mr. Arvanetes said Medicine Horse was facing in tribal court.

Considering these factors, along with Medicine Horse's other characteristics, the

defense requested a downward variance to an 18-month sentence. *See e.g.*, Sent.

Memo. (Doc. 30 at 4-7.) As set forth above, however, upon consideration of all

the requisite factors, Medicine Horse received a 30-month sentence.

To the extent, however, that Medicine Horse believes this Court should have

run his federal sentence concurrently with another term of imprisonment, there was

no tribal sentence with which this Court could have imposed a concurrent federal

sentence. This is precisely because he had not yet been sentenced by tribal authorities. *See* PSR (Doc. 38 at 2, 7-13.) Similarly, there was no undischarged term of tribal imprisonment at the time this Court imposed its sentence, to which Medicine Horse was subject, that this Court could have considered under Section 5G1.3. Or, put another way, Medicine Horse is not entitled to a sentence reduction under the United States Sentencing Guidelines.

The Presentence Report Writer indicated that Medicine Horse was arrested on the writ of habeas corpus ad prosequendum on August 9, 2022, and was in custody on this federal matter for 248 days. (Doc. 38 at 1-2.) It is within the purview of the BOP to determine what credit, if any, Medicine Horse is to receive once he arrives in their custody. *See* 18 U.S.C. § 3585(a)-(b). But Medicine Horse is advised the BOP will not grant a federal prisoner credit for time spent in federal custody before imposition of his federal sentence if the term of pre-sentence imprisonment has been credited against another sentence. *See e.g., Schlening v. Thomas*, 642 F. 3d 1242, 1245 n. 2 (9th Cir. 2011)(*citing* 18 U.S.C. § 3585(b)).

As Medicine Horse acknowledges, he is not yet in the custody of the BOP because his tribal sentence is not set to expire until October of 2024. This Court lacks the authority to under § 3585(b) to grant Medicine Horse credit for time served after his arrest; that authority lies within the purview of the Attorney General, acting through the BOP. *See United States v. Peters*, 470 F. 3d 907, 909

8

(9th Cir. 2006); *United States v. Wilson*, 503 U.S. 329, 334 (1992). Any challenge

Medicine Horse seeks to make to the BOP's calculation of his federal sentence is

presently premature.

In short, this Court cannot grant Medicine Horse the relief sought. The

matter will be dismissed.

## IV.   Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only

after obtaining a certificate of appealability from the district court or the circuit

court.  28 U.S.C. § 2253( c)(1)(B).  "A certificate of appealability may issue ...

only if the applicant has made a substantial showing of the denial of a

constitutional right."  28 U.S.C. § 2253( c)(2).  This standard is satisfied if "jurists

of reason could disagree with the district court's resolution of the constitutional

claims" or "conclude the issues presented are adequate to deserve encouragement

to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citing *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000)).

Under this standard, the Court concludes that Medicine Horse is not entitled

to a certificate of appealability.  No reasonable jurist would find debatable

Medicine Horse's failure to demonstrate entitlement to relief on the claims

presented in his § 2255 Motion.

Accordingly, IT IS ORDERED:

9

1. Medicine Horse's Motion for Clarification (Doc. 40) is DENIED as moot. The Court has explained the nature of his sentence herein.

2. Medicine Horse's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 42) is DENIED.

3. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Medicine Horse files a Notice of Appeal.

4. The clerk shall ensure that all pending motions in this case and in CV 24-83-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Medicine Horse.

DATED this 13th day of August, 2024.

Susan P. Watters
United States District Court Judge