IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>TYLER DALE MEDICINE HORSE,<br><br>Defendant/Movant. | Cause No. CR 22-69-BLG-SPW<br>CV 24-83-BLG-SPW<br><br><br>ORDER |

This case is before the Court on Defendant/Movant Tyler Dale Medicine Horse's ("Medicine Horse") amended motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, following remand from the Ninth Circuit Court of Appeals. *See*, Amd. Mot. (Doc. 56.) Medicine Horse is represented by counsel.

Medicine Horse is presently serving a 30-month sentence with the Bureau of Prisons for being a Prohibited Person in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), (Count I), and Possession of an Unregistered Firearm, in violation of 26 U.S.C § 5861(d), (Count II). Judgment was entered on April 13, 2023. (Doc. 36.)

1

Section 2255 allows a federal prisoner to challenge imposition or length of his incarceration on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255(a). Relief under §2255 is afforded "[i]f the court finds that …there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. §2255(b).

## I.    Background

The events of November 27, 2021, which are the subject of not only the charges and sentence in the instant matter, but also Medicine Horse's tribal court sentence, have been summarized as follows:

> BIA Officer Rossman attempted to conduct a traffic stop on a van being driven by Medicine Horse. Officer Rossman had received multiple calls reporting the vehicle was speeding as it drove toward Lame Deer. Officer Rossman observed the vehicle swerving over the fog line and the jerking back toward the center line. The vehicle repeatedly crossed over the center line. When Officer Rossman activated his emergency lights, the vehicle sped off.
>
> Further pursuit ensued, during which Medicine Horse swerved into a ditch and nearly struck a pedestrian holding a child. Medicine Horse crashed into a light pole and while attempting to reverse he struck Officer Rossman's patrol vehicle. Medicine Horse persisted in his attempts to drive the vehicle away, and Officer Rossman deployed his OC spray. When Medicine Horse continued to disobey commands, he was tased. Medicine Horse was ultimately transferred to the Northern Cheyenne Emergency Room. During a sobriety exam, he admitted to using methamphetamine. A subsequent

2

blood draw and urinalysis both tested positive for methamphetamine. A portable breath test administered to Medicine Horse registered an alcohol level of .231% BAC. A magazine for a .22 caliber weapon was also found on his person.

During a subsequent search of the vehicle, officers discovered a sawed off .22 caliber rifle and an open paper bindle of a white powdery substance that tested positive for methamphetamine. ATF agents conducted a search via the National Firearms Registration and Transfer Record and learned Medicine Horse did not have a short-barreled rifle registered to him. Additionally, Medicine Horse had previously been convicted of Sexual Assault on a Minor in Cause No. CR 12-28-BLG-RFC, in the United States District Court, District of Montana, and was prohibited from possessing firearms.

*See generally*, PSR (Doc. 38 at 4-5, ¶¶ 9-12); Ord. (Doc. 45 at 1-2.) As a result of these events, Medicine Horse was charged in the Northern Cheyenne tribal court.

On June 16, 2022, a grand jury indicted Medicine Horse for being a Prohibited Person in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), (Count I), and Possession of an Unregistered Firearm, in violation of 26 U.S.C § 5861(d), (Count II). *See* Indictment (Doc. 2 at 1-2.) Medicine Horse was writted out of tribal custody on August 18, 2022. *See*, (Docs. 7 & 8.) On September 27, 2022, he made his initial appearance before Magistrate Judge Cavan, along with appointed counsel Federal Defender Mr. Evangelo Arvanetes ("Arvanetes"). Following pleas of guilty to Counts I and II, on April 13, 2023, the undersigned sentenced Medicine Horse to the Bureau of Prisons ("BOP") for a period of 30 months on each count, with the sentences to run concurrently,

3

followed by a 3-year term of supervised release. *See,* Judg. (Doc. 36.) Medicine Horse did not file a direct appeal. At the time of his sentencing in this Court, it appeared that Medicine Horse had not yet been convicted or sentenced in connection with his tribal court proceedings. *See e.g.,* PSR (Doc. 38 at 2, 7-13.)

In a prior order, this Court determined that Medicine Horse was not entitled to the relief under § 2255. *See,* (Doc. 45.) Medicine Horse had requested in his original motion that his federal sentence run concurrently to a sentence imposed by the Northern Cheyenne tribal court. But it was observed that there was no tribal sentence with which this Court could have imposed a concurrent federal sentence. Specifically, there was no indication in the PSR, or in argument advanced by Medicine Horse or his counsel, that he had been sentenced by tribal authorities at the time of his sentencing in this Court. *See,* Ord. (Doc. 45 at 2-3), *citing* PSR (Doc. 38 at 2, 7-13.)

While Mr. Arvanetes acknowledged that Medicine Horse had been charged with *driving* offenses arising out of the November 2021 arrest by tribal authorities, and had been incarcerated, there was no argument that Medicine Horse had been sentenced by the tribal court or that his federal sentence should run concurrently to a tribal sentence. In the defense's sentencing memorandum, there were no objections or clarifications made to the PSR. *See e.g.,* Sent. Memo (Doc. 30 at 2.) The sentencing memorandum did not discuss or address any tribal charges or the

tribal court sentence arising from the events of November 27, 2021. Instead, it simply made reference to the nature and circumstances of the offense as outlined in the PSR. (*Id.* at 3.) In light of these factors, along with Medicine Horse's other characteristics, the defense requested a downward variance from the advisory guideline range to an 18-month sentence. *See e.g.,* (*Id.* at 4-7.)

During the sentencing hearing, Arvanetes suggested that the fact of the tribal charges could be considered under Section 3553(a) of Title 18, to impose a sentence sufficient, but not greater than necessary, but he did not argue the tribal charges constituted "relevant conduct" for purposes of USSG § 5G1.3. Additionally, it was acknowledged that while the same series of events led to both tribal and federal charges, Medicine Horse was only charged with gun possession-related offenses in this Court. In supporting his request for a downward variance, Mr. Arvanetes argued:

> We're asking for a little less time, in part, because of the 3553(a) factors, but also in the context that Mr. Medicine Horse got charged in tribal court with similar – similar—not the weapon, but as far as the driving and all that, he got charged and has been in jail in tribal court, you know, for a certain amount of time as well.

*See*, Sent. Trans (Doc. 41 at 10:1-7.)

During his allocution, Medicine Horse did not directly reference his tribal charges or convictions. He simply stated that "over the last 17 months" he had been "really, really working [his] steps" and doing "self-inventory all over again"

5

which caused him to arrive at the conclusion that in order to be sober he needed to surround himself with sober people and take his sobriety seriously so that he would not find himself back in federal court. *See*, Sent. Trans. (Doc. 41 at 10: 14-20.) But Medicine Horse did not explain that he had been sentenced in tribal court, nor did he indicate that "the last 17 months" constituted time he had been serving for his tribal court offenses and/or fines. *See also*, Acceptance Letter (Doc. 38 at 6.)

Medicine Horse was committed to the BOP for a period of 30 months on each count, with the sentences to run concurrently, followed by a 3- year term of supervised release. *See,* Judg. (Doc. 36.)

## II.   New Information

Although the PSR was detailed and comprehensive, it did not contain any information regarding the tribal court sentence Medicine Horse had received and been serving prior to appearing on these charges.  Based upon recent documents provided by the government, *see* (Doc. 56-1), when Medicine Horse was arrested in conjunction with the "driving offenses," he was actually arrested by BIA and cited with 15 tribal court offenses that included traffic violations: failure to heed police emergency lights, attempting to elude, two counts of speeding, reckless driving, failure to yield, driving while intoxicated by alcohol, and driving under the influence of methamphetamine, in addition to non-traffic related offenses, including: violence to police, resisting arrest, disorderly conduct, two counts of

aggravated assault, and two counts of drug abuse of methamphetamine. (*Id.* at 1-15.)

Medicine Horse appeared in tribal court on December 1, 2021. (*Id.* at 17.) He pled guilty to four charges- disorderly conduct, failure to heed police emergency lights, driving while intoxicated, and failure to yield. (*Id.* at 20.) Medicine Horse was ordered to serve 25 days in jail, was directed to pay $100 in court fees within 30 days of his release and was fined $1,500. (*Id.*)

On May 13, 2022, Medicine Horse was convicted and sentenced on the remaining charges, including two counts of aggravated assault, two counts of violence to police, resisting arrest, drug abuse, speeding, and driving under the influence of methamphetamine. (*Id.* at 22-23.) Medicine Horse received a sentence of 635 days imprisonment, and was credited for 64 days of time served, resulting in a net 571-day sentence. Medicine Horse was ordered to pay $250 in court fees within 10 days and was fined $6,500. (*Id.* at 22-23.) The tribal court denied Medicine Horse release on probation but noted that it could be considered at a later date in conjunction with drug and alcohol treatment. (*Id.* at 23.)

As pointed out by Medicine Horse's §2255 counsel, the nature of the tribal court sentence imposed somewhat complicates this matter. Medicine Horse was sentenced by the Northern Chyenne Tribal Court to "PAY OR SERVE CONSECUTIVE." (*Id.* at 20, 22.) According to counsel, what this means in

practice is that when a defendant receives a sentence with both a period of incarceration and a fine, he serves the custodial sentence first. If a defendant does not pay his fine, he is then ordered to serve time in lieu of a fine at a rate of $20/day. *See*, (Doc. 56 at 14.) The "time in lieu of paying a fine" runs consecutively to the underlying sentence of imprisonment. Counsel asserts that due to the underlying tribal sentence and the "pay or consecutive" requirement, Medicine Horse did not begin serving his federal sentence until he had fully satisfied the Northern Cheyenne sentence, long after the federal sentence was imposed. (*Id.* at 14-15.)

The United States Marshalls Service confirmed that Medicine Horse was sentenced by this Court on April 13, 2023, and he was returned to tribal custody on April 21, 2023. Medicine Horse was not placed back in the custody of the BOP until October 25, 2024. Thus, Medicine Horse spent the intervening 18 months, between sentencing in this Court and being placed back into BOP custody on October 25, 2024, serving the remainder of his tribal court sentence. At the outset of these proceedings, Medicine Horse's release date, as calculated by the BOP, was December 11, 2026. *See*, (Doc. 56 at 2.) It appears that in the interim, Medicine Horse's release date has been recalculated by the BOP as June 24, 2026.[1]

//

---

[1] *See*, BOP Inmate Locator: https://www.bop.gov/inmateloc/ (accessed May 20, 2026).

### III.   Medicine Horse's Claims

Medicine Horse claims: (1) he was denied his Fifth Amendment right to due process when he was sentenced on materially false or unreliable information, and (2) he was denied his Sixth Amendment right to effective assistance of counsel with his attorney did not object to the failure to include his tribal court convictions in the PSR and failed to argue for concurrent sentences.  (Doc. 56 at 8-15.)

The government argues that Medicine Horse's due process claim is procedurally defaulted, as it was not raised on direct appeal, and that Medicine Horse failed to demonstrate cause to excuse the default.  (Doc. 57 at 7-9.)  In relation to the ineffective assistance of counsel claim, the government argues that counsel did not provide deficient representation, but even if he did, Medicine Horse cannot establish the requisite prejudice.  (*Id.* at 9-10.)  The government concedes that the Undersigned is in the best position to determine whether or not Medicine Horse was actually prejudiced by the omission of the tribal court convictions from the PSR and whether or not that information would have impacted the sentence imposed.  (*Id.* at 10.)

As to the due process claim, Medicine Horse seems to acknowledge the procedural default, as he did not address the purported default or supply cause to excuse it in his reply brief.  *See,* (Doc. 58.)  Accordingly, the Court finds that the due process claim is procedurally defaulted; it will be denied.

## IV.   Analysis

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including trial, sentencing, and direct appeal. *United States v. Leonti*, 326 F.3d 1111, 1116–17 (9th Cir. 2003). To challenge a sentence on grounds of ineffective assistance of counsel, a petitioner must show that: (1) counsel's performance was deficient, and (2) the deficiency prejudiced his defense. *See Strickland v. Washington*, 466 U. S. 668 (1984). Mere conclusory allegations are insufficient to state a claim of ineffective assistance of counsel. *See Shah v. United States*, 878 F. 2d 1156, 1161 (9th Cir. 1989).

To establish deficient performance, a petitioner must show that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This may be shown where "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result" or "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 686-97. There is a strong presumption that counsel's performance falls "within the wide range of reasonable professional assistance." *Id.* at 689. This is so because for the defendant, "[i]t is all to tempting...to second-guess counsel's assistance after conviction or adverse sentence..." *Id.*

To establish prejudice, a petitioner must affirmatively prove by a reasonable

10

degree of probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. This standard is "highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986). In assessing whether the result would have been different, the Court should consider "the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. Both prongs of the Strickland test must be met "before it can be said that a conviction (or sentence) 'resulted from a breakdown in the adversary process that render[ed] the result [of the proceeding] unreliable' and thus in violation of the Sixth Amendment." *United States v. Thomas*, 417 F. 3d 1053, 1056 (9th Cir. 2005)(*quoting Strickland*, 466 U.S. at 687)(alterations in original). A court may consider the performance and prejudice components of the *Strickland* test in either order because both must be met. *See Strickland*, 466 U.S. at 697.

Medicine Horse contends that Arvanetes performed deficiently at sentencing by failing to independently investigate the facts related to sentencing, particularly the tribal court convictions and sentence, and correct the PSR. *See*, (Doc. 56 at 12-13.) A reasonable attorney, knowing Medicine Horse was writted out of custody in Oklahoma, would have inquired and obtained additional records to determine the disposition of the tribal court charges. (Doc. 58 at 6-7.) According to Medicine Horse, the failure to do so fell below the objective standard of reasonableness. Had Arvanetes done so and provided this Court with accurate

11

sentencing information relative to the tribal court proceedings, it is likely that this Court would have considered running Medicine Horse's sentence concurrently with the undischarged portion remaining on his tribal court sentences. Thus, for purposes of *Strickland*, Medicine Horse was prejudiced by Arvanetes failure to investigate and provide such information. (Doc. 56 at 13-14.)

In response, the government contends that Arvanetes was not deficient, but even if he was, there was no prejudice to Medicine Horse. In support of the lack of prejudice position, the government points out that this Court declined to grant a downward variance based upon the unidentified period of time Medicine Horse had spent in tribal custody prior to his federal sentencing. The government also points out that in a prior order, it was noted that the tribal charges and the federal charges addressed separate harms. Thus, the government contends that it appears the intention was to impose a separate, rather than concurrent, sentence for the separate conduct involved in the offenses of November 27, 2021. (Doc. 57 at 9-10.)

The Government's position is well-taken. While the Court is not finding that Arvanetes performed deficiently, even assuming *arguendo* that such a finding was made, Medicine Horse was not prejudiced. While a clearer picture of Medicine Horse's tribal sentence would have been helpful at sentencing, the Undersigned was aware that Medicine Horse had been charged by tribal

authorities. Additionally, had the entire picture been presented, a concurrent sentence would not have been imposed.

Medicine Horse had a prior felony conviction in this Court, and his sentence was revoked on five separate occasions for various violations. *See e.g.*, PSR (Doc. 38 at 7-8); *see also, United States v. Medicine Horse*, Cause No. CR-12-28-BLG-SPW. Medicine Horse's most recent revocation on that matter, which occurred on July 16, 2020, resulted in the imposition of a 15-month custodial sentence. *United States v. Medicine Horse*, Cause No. CR-12-28-BLG-SPW, Judg. (D. Mont. July 16, 2020). Accordingly, Medicine Horse had just finished serving the revocation sentence when he committed the offenses underlying the charges in both the instant matter and the tribal court matter.

Additionally, the Court agrees that although technically arising out of the same series of events, the federal sentence imposed for Medicine Horse's unlawful firearm possession addressed a separate harm than that stemming from his tribal convictions and sentences. In the tribal matter, Medicine Horse was driving a vehicle dangerously on the reservation and at high speeds with a blood alcohol level of .231 %, while also having used methamphetamine. Medicine Horse fled from and evaded an officer attempting to effectuate a traffic stop, resulting in a pursuit. During this pursuit, Medicine Horse nearly hit a pedestrian who was holding a child; the woman had to jump off the road to avoid being hit. Medicine

13

Horse then crashed into a light pole, and when he tried to reverse and leave the scene, he struck the officer's patrol vehicle. Medicine Horse resisted arrest and even after pepper spray was deployed, he persisted in attempting to drive away. A sawed off .22 caliber rifle was located in the vehicle, as well as a paper bindle containing methamphetamine. In sum, on November 27, 2021, Medicine Horse engaged in and caused a very dangerous chain of events that fortunately did not result in more dire consequences than the criminal charges and convictions at issue.

It may have been strategic for Arvanetes to characterize the tribal convictions as driving offenses so as not to bring additional attention to them, as there were non-driving related charges and sentences involved. But the performance of Arvanetes matters not in the present analysis. Had this Court been privy to the tribal sentence Medicine Horse was serving and the exact nature of his tribal convictions, a concurrent sentence would not have been imposed. The intention was for this Court's sentence to address a separate and distinct harm, aside from that addressed by the tribal court- Medicine Horse's possession of an unregistered firearm and being a person prohibited from doing so. Put another way, Medicine Horse cannot make the demanding showing that but for counsel's errors the result of the proceeding in this Court would have been different. *Strickland*, 466 U.S. at 694. Accordingly, the amended motion to vacate will be

14

denied.

## V.    Certificate of Appealability

A movant may appeal a district court's dismissal of a § 2255 motion only after obtaining a certificate of appealability from the district court or the circuit court. 28 U.S.C. § 2253( c)(1)(B). "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253( c)(2). This standard is satisfied if "jurists of reason could disagree with the district court's resolution of the constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Under this standard, the Court concludes that Medicine Horse is not entitled to a certificate of appealability. No reasonable jurist would find debatable Medicine Horse's failure to demonstrate entitlement to relief on the claims presented in his § 2255 Motion.

Accordingly, **IT IS ORDERED**:

1. Medicine Horse's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 56) is DENIED.

2. A certificate of appealability is DENIED. The clerk shall immediately process the appeal if Medicine Horse files a Notice of Appeal.

15

3. The clerk shall ensure that all pending motions in this case and in CV 24-83-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Medicine Horse.

DATED this ___1st___ day of June, 2026.

Susan P. Watters
United States District Court Judge

16